

**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*

---

*970 Broad Street, 7th floor*　　　　*973-645-2700*
*Newark, New Jersey 07102*

RJG/PL AGR
2022R00343/RJG

December 11, 2023

Andrea Bergman, Esq.
Federal Public Defender's Office
22 South Clinton Avenue
Station Plaza, 4th Floor
Trenton, NJ 08609

**RECEIVED**

FEB 0 1 2024

AT 8:30_____M
CLERK, U.S. DISTRICT COURT - DNJ

Re:　　Plea Agreement with Dion Marsh

Dear Ms. Bergman:　　　　　　　　　　　　　　　24-cr-71

　　　This letter sets forth the plea agreement between your client, Dion Marsh and the United States Attorney for the District of New Jersey ("this Office"). If Dion Marsh does not accept this plea agreement, his sentencing exposure could increase beyond what is discussed in this plea agreement as a result of this Office's investigation.

　　　This plea agreement is contingent upon approval by the Department of Justice, Civil Rights Division.

Charge

　　　Conditioned on the understandings specified below, this Office will accept a guilty plea from Dion Marsh to a six-count Information, which charges Dion Marsh with five counts of hate crime assault, in violation of 18 U.S.C. § 249(a)(1), and one count of carjacking, in violation of 18 U.S.C. § 2119(1).

　　　If Dion Marsh enters a guilty plea and is sentenced on these charges and otherwise fully complies with this agreement, this Office will not initiate any further criminal charges against Dion Marsh for assaults directed at Orthodox Jewish men in the Lakewood Township, New Jersey area on April 8, 2022, and a related carjacking on the same date. But if a guilty plea in this matter is not entered for any reason or a guilty plea or judgment of conviction entered in accordance with this agreement does not remain in full force and effect, this Office may reinstate any dismissed charges and initiate any other charges against Dion Marsh even if the

applicable statute of limitations period for those charges expires after Dion Marsh signs this agreement, and Dion Marsh agrees not to assert that any such charges are time-barred.

Sentencing

The violation of 18 U.S.C. § 249 charged in Count 1 carries a statutory maximum prison sentence of 10 years. Because each offense involved an attempt to kill, the violations of 18 U.S.C. § 249 charged in Counts 2 – 5 each carry a statutory maximum prison sentence of life. The violation of 18 U.S.C. § 2119(1) charged in Count 6 carries a statutory maximum prison sentence of 15 years. The prison sentences on Counts 1 – 6 may run consecutively to each other or to any prison sentence Marsh is serving or is ordered to serve.

All counts charged in the information also carry a statutory maximum fine equal to the greatest of (1) $250,000, or (2) twice the gross amount of any pecuniary gain that any persons derived from the offense, or (3) twice the gross amount of any pecuniary loss sustained by any victims of the offense. Fines imposed by the sentencing judge may be subject to the payment of interest.

The sentence to be imposed upon Dion Marsh is within the sole discretion of the sentencing judge, subject to the provisions of the Sentencing Reform Act, 18 U.S.C. §§ 3551-3742, and the sentencing judge's consideration of the United States Sentencing Guidelines. Those Guidelines are advisory, not mandatory. The sentencing judge may impose any reasonable sentence up to and including the statutory maximum term of imprisonment and the maximum statutory fine. This Office cannot and does not make any representation or promise as to what Guidelines range may be found by the sentencing judge, or as to what sentence Dion Marsh ultimately will receive.

Further, in addition to imposing any other penalty on Dion Marsh, the sentencing judge as part of the sentence:

(1) will order Dion Marsh to pay an assessment of $100 for each count of conviction pursuant to 18 U.S.C. § 3013, which assessments must be paid by the date of sentencing;

(2) must order Dion Marsh to pay restitution pursuant to 18 U.S.C. § 3663 *et seq.*;

(3) pursuant to 18 U.S.C. § 3583, may require Dion Marsh to serve a term of supervised release of not more than 5 years for Counts 2 – 5 and not more than 3 years for Counts 1 and 6, which will begin at the expiration of any term of imprisonment imposed. Should Dion Marsh be placed on a term of supervised release and subsequently violate any of the

conditions of supervised release before the expiration of its term, Dion Marsh may be sentenced to not more than 5 years' imprisonment for Counts 2 – 5 and not more than 2 years for Counts 1 and 6 in addition to any prison term previously imposed, regardless of the statutory maximum term of imprisonment set forth above and without credit for time previously served on post-release supervision, and may be sentenced to an additional term of supervised release for each count of conviction.

Rights of This Office Regarding Sentencing

Except as otherwise provided in this agreement, this Office may take any position with respect to the appropriate sentence to be imposed on Dion Marsh by the sentencing judge. This Office may also correct any misstatements relating to the sentencing proceedings and provide the sentencing judge and the United States Probation Office all law and information relevant to sentencing, favorable or otherwise. And this Office may inform the sentencing judge and the United States Probation Office of: (1) this agreement; and (2) the full nature and extent of Dion Marsh's activities and relevant conduct with respect to this case.

Stipulations

This Office and Dion Marsh will stipulate at sentencing to the statements set forth in the attached Schedule A, which is part of this plea agreement. Both parties understand that the sentencing judge and the United States Probation Office are not bound by those stipulations and may make independent factual findings and may reject any or all of the parties' stipulations. Nor do these stipulations restrict the parties' rights to respond to questions from the Court and to correct misinformation that has been provided to the Court.

This agreement to stipulate on the part of this Office is based on the information and evidence that this Office possesses as of the date of this agreement. Thus, if this Office obtains or receives additional evidence or information prior to sentencing that it believes materially conflicts with a Schedule A stipulation, that stipulation shall no longer bind this Office. A determination that a Schedule A stipulation is not binding shall not release the parties from any other portion of this agreement, including any other Schedule A stipulation.

If the sentencing court rejects a Schedule A stipulation, both parties reserve the right to argue on appeal or at post-sentencing proceedings that the sentencing court did so properly. Finally, to the extent that the parties do not stipulate to a particular fact or legal conclusion in this agreement, each reserves the right to argue how that fact or conclusion should affect the sentence.

Waiver of Appeal and Post-Sentencing Rights

As set forth in Schedule A and the paragraph below, this Office and Dion Marsh waive certain rights to appeal, collaterally attack, or otherwise challenge the judgment of conviction or sentence.

Immigration Consequences

Dion Marsh understands that, if Dion Marsh is not a citizen of the United States, Dion Marsh's guilty plea to the charged offense will likely result in Dion Marsh being subject to immigration proceedings and removed from the United States by making Dion Marsh deportable, excludable, or inadmissible, or ending Dion Marsh's naturalization. Dion Marsh understands that the immigration consequences of this plea will be imposed in a separate proceeding before the immigration authorities. Dion Marsh wants and agrees to plead guilty to the charged offense regardless of any immigration consequences of this plea, even if this plea will cause Dion Marsh's removal from the United States. Dion Marsh understands that Dion Marsh is bound by this guilty plea regardless of any immigration consequences. Accordingly, Dion Marsh waives any right to challenge the guilty plea, sentence, or both based on any immigration consequences. Dion Marsh also agrees not to seek to withdraw this guilty plea, or to file a direct appeal, or any kind of collateral attack challenging the guilty plea, conviction, or sentence, based on any immigration consequences of the guilty plea or sentence.

Other Provisions

This agreement is limited to the United States Attorney's Office for the District of New Jersey and cannot bind other federal, state, or local authorities. If requested to do so, however, this Office will bring this agreement to the attention of other prosecuting offices.

This agreement was reached without regard to any civil or administrative matters that may be pending or commenced in the future against Dion Marsh. So this agreement does not prohibit the United States, any agency thereof (including the Internal Revenue Service and Immigration and Customs Enforcement) or any third party from initiating or prosecuting any civil or administrative proceeding against him.

No provision of this agreement shall preclude Dion Marsh from pursuing in an appropriate forum, when permitted by law, a claim that he received constitutionally ineffective assistance of counsel.

<u>No Other Promises</u>

This agreement constitutes the entire plea agreement between Dion Marsh and this Office and supersedes any previous agreements between them. No additional promises, agreements, or conditions have been made or will be made unless set forth in writing and signed by the parties.

            Very truly yours,

            PHILIP R. SELLINGER
            United States Attorney

            *s/ R. Joseph Gribko*

By: R. Joseph Gribko
    Deputy Chief, Civil Rights Division

APPROVED:

*s/ Michael E. Campion*

Michael E. Campion
Chief, Civil Rights Division

I have received this letter from my attorney, Andrea Bergman, Esq. I have read it. My attorney and I have reviewed and discussed it and all of its provisions, including those addressing the charge, sentencing, stipulations (including the attached Schedule A), waiver, restitution, and immigration consequences. I understand this letter fully and am satisfied with my counsel's explanations. I accept its terms and conditions and acknowledge that it constitutes the plea agreement between the parties. I understand that no additional promises, agreements, or conditions have been made or will be made unless set forth in writing and signed by the parties. I want to plead guilty pursuant to this plea agreement.

AGREED AND ACCEPTED:

_____          Date: Jan 4th 2024
Dion Marsh


I have reviewed and discussed with my client this plea agreement and all of its provisions, including those addressing the charge, sentencing, stipulations (including the attached Schedule A), waiver, restitution, and immigration consequences. My client understands this plea agreement fully and wants to plead guilty pursuant to it.


_____          Date: 1.4.24
Andrea Bergman, Esq.
Counsel for Defendant

**Plea Agreement With Dion Marsh**

Schedule A

1. This Office and Dion Marsh recognize that the United States Sentencing Guidelines do not bind the sentencing judge. Each party nevertheless agrees to these stipulations.

2. The version of the Guidelines effective November 1, 2023 applies in this case.

### COUNT 1
(Hate Crimes Prevention Act)

3. The applicable guideline for Count 1 is U.S.S.G. § 2H1.1. This guideline provides that the Base Offense Level is the offense level from the offense guideline applicable to any underlying offense.

4. The underlying offense for Count 1 is robbery and the underlying guideline is U.S.S.G. § 2B3.1. This guideline provides that the Base Offense Level is 20. U.S.S.G. § 2B3.1(a).

5. The victim of this offense sustained bodily injury. The offense level is therefore increased by 2 levels. U.S.S.G. § 2B3.1(3)(A).

6. Count 1 involved carjacking. The offense level is therefore increased by 2 levels. U.S.S.G. § 2B3.1(b)(5).

7. Dion Marsh intentionally selected the victim of Count 1 because of the victim's actual or perceived religion, and therefore, an upward adjustment of 3 levels is appropriate pursuant to U.S.S.G. § 3A1.1(a).

8. Accordingly, the parties agree that the total offense applicable to Count 1 is 27.

### COUNT 2
(Hate Crimes Prevention Act)

9. The applicable guideline for Count 2 is U.S.S.G. § 2H1.1. This guideline provides that the Base Offense Level is the offense level from the offense guideline applicable to any underlying offense.

10. The underlying offense for Count 2 is assault with attempt to commit murder and the underlying guideline is U.S.S.G. § 2A2.1. This guideline provides that the Base Offense Level is 27. U.S.S.G. § 2A2.1(a)(2).

11. Dion Marsh intentionally selected the victim of Count 2 because of the victim's actual or perceived religion, and therefore, an upward adjustment of 3 levels is appropriate pursuant to U.S.S.G. § 3A1.1(a).

12. Accordingly, the parties agree that the total offense applicable to Count 2 is 30.

## COUNT 3
### (Hate Crimes Prevention Act)

13. The applicable guideline for Count 3 is U.S.S.G. § 2H1.1. This guideline provides that the Base Offense Level is the offense level from the offense guideline applicable to any underlying offense.

14. The underlying offense for Count 3 is assault with attempt to commit murder and the underlying guideline is U.S.S.G. § 2A2.1. This guideline provides that the Base Offense Level is 27. U.S.S.G. § 2A2.1(a)(2).

15. The victim of Count 3 sustained serious bodily injury. The offense level on Count 3 is therefore increased by 2 levels. U.S.S.G. § 2A2.1(b)(1)(B).

16. Dion Marsh intentionally selected the victim of Count 3 because of the victim's actual or perceived religion, and therefore, an upward adjustment of 3 levels is appropriate pursuant to U.S.S.G. § 3A1.1(a).

17. Accordingly, the parties agree that the total offense applicable to Count 3 is 32.

## COUNTS 4 and 5
### (Hate Crimes Prevention Act)

18. The applicable guidelines for each of Counts 4 and 5 is U.S.S.G. § 2H1.1. This guideline provides that the Base Offense Level is the offense level from the offense guideline applicable to any underlying offense.

19. The underlying offense for Counts 4 and 5 is assault with attempt to commit murder and the underlying guideline is U.S.S.G. § 2A2.1. This guideline provides that the Base Offense Level is 27. U.S.S.G. § 2A2.1(a)(2).

20. The victims of each of Counts 4 and 5 sustained permanent or life threatening bodily injury. The offense level on each of Counts 4 and 5 is therefore increased by 4 levels. U.S.S.G. § 2A2.1(b)(1)(A).

21. Dion Marsh intentionally selected the victims of each of Counts 4 and 5 because of the victims' actual or perceived religion, and therefore, an upward adjustment of 3 levels is appropriate pursuant to U.S.S.G. § 3A1.1(a).

22. Accordingly, the parties agree that the total offense applicable to each of Counts 4 and 5 is 34.

## COUNT 6
### (Carjacking)

23. The applicable guideline for Count 6 is U.S.S.G. § 2B3.1. This guideline provides that the Base Offense Level is 20.

24. The victim of this offense sustained bodily injury. The offense level is therefore increased by 2 levels. U.S.S.G. § 2B3.1(3)(A).

25. The offense involved carjacking. The offense level is therefore increased by 2 levels. U.S.S.G. § 2B3.1(b)(5).

26. Dion Marsh intentionally selected the victim of Count 6 because of the victim's actual or perceived religion, and therefore, an upward adjustment of 3 levels is appropriate pursuant to U.S.S.G. § 3A1.1(a).

27. Accordingly, the parties agree that the total offense applicable to Count 6 is 27.

## ADJUSTMENT FOR MULTIPLE COUNTS

28. Because Counts 1 and 6 involve the same victim and the same act or transaction, they group together pursuant to U.S.S.G. § 3D1.2(a). Because the offense level for Count 1 and Count 6 are equal, the offense level for this Group remains a total offense level of 28.

29. Because offenses covered by U.S.S.G. § 2H1.1 are specifically excluded from U.S.S.G. § 3D1.2(d), Counts 1 – 5 do not group together.

30. Pursuant to the operation of U.S.S.G. § 3D1.4, one Unit is assigned to each of Counts 2 – 5, and one-half Unit is assigned to the group of Counts 1 and 6 because it is 6 levels less serious than the Group with the highest offense level.

31. This results in a total of 4.5 Units. U.S.S.G. § 3D1.4, provides that a total of 3.5 to 5 Units corresponds to a 4-level increase to the Group with the highest offense level, which, in this case, is the offense level of 34 applicable to Counts 4 and 5. After applying a 4-level increase, the combined offense level is 38.

32. As of the date of this letter, Dion Marsh has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for the offenses charged. Therefore, a downward adjustment of 2 levels for acceptance of responsibility is appropriate if Dion Marsh's acceptance of responsibility continues through the date of sentencing. See U.S.S.G. § 3E1.1(a).

33. As of the date of this letter, Dion Marsh has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting this Office to avoid preparing for trial and permitting this Office and the court to allocate their resources efficiently. At sentencing, this Office will move for a further 1-point reduction in Dion Marsh's offense level pursuant to U.S.S.G. § 3E1.1(b) if the following conditions are met: (a) Dion Marsh enters a plea pursuant to this agreement, (b) this Office, in its discretion, determines that Dion Marsh's acceptance of responsibility has continued through the date of sentencing and Dion Marsh therefore qualifies for a 2-point reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a), and (c) Dion Marsh's offense level under the Guidelines prior to the operation of § 3E1.1(a) is 16 or greater.

34. Accordingly, the parties agree that the total Guidelines offense level applicable to defendant is 35 (the "Total Offense Level").

35. Each party agrees not to advocate for any term of imprisonment outside the Guidelines range resulting from (a) the Total Offense Level and (b) the criminal history category that the sentencing judge applies under Chapter 4 of the Guidelines without any departure or variance.

36. If the term of imprisonment does not exceed 210 months, and except as specified in the next paragraph below, Dion Marsh will not challenge or seek to reduce by any means any component of the sentence imposed by the sentencing judge for any reason other than ineffective assistance of counsel. The term "any means" includes a direct appeal under 18 U.S.C. § 3742 or 28 U.S.C. § 1291, a motion to vacate the sentence under 28 U.S.C. § 2255, a motion to reduce the term of imprisonment under 18 U.S.C. § 3582(c)(1) or (c)(2), a motion for early termination of supervised release under 18 U.S.C. § 3583(e)(1), and any other appeal, motion, petition, or writ, however captioned, that seeks to attack or modify any component of the sentence. If the term of imprisonment is at least 168 months, this Office will not challenge by appeal, motion, or writ any component of the sentence imposed by the sentencing judge. The provisions of this paragraph bind the parties even if the sentencing judge employs a Guidelines analysis different from the one above.

37. Both parties reserve the right to file or to oppose any appeal, collateral attack, writ or motion not barred by the preceding paragraph or any other provision of this plea agreement. Moreover, the preceding paragraph does not apply to:

    (a)    Any proceeding to revoke the term of supervised release.

    (b)    A motion to reduce the term of imprisonment under 18 U.S.C. § 3582(c)(1)(A).

    (c)    An appeal from the denial of a § 3582(c)(1)(A) motion on the grounds that the court erred in finding no extraordinary and

compelling circumstances warranting a reduced term of imprisonment or that the court failed to consider those circumstances as a discretionary matter under the applicable factors of 18 U.S.C. § 3553(a).

38. The parties further agree that, pursuant to U.S.S.G. § 5G1.3(b), any term of imprisonment imposed on Dion Marsh shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment imposed in New Jersey Superior Court, Ocean County Case # 22-027783.